EeeeMAN, J.,
delivered the opinion of a majority of the Court.
The prisoner was indicted at April Term of the Criminal Court of Davidson county, for the murder of John Perry.
On the 27th of June, 1870, he was arraigned, pleaded not guilty, and was put upon his trial before a jury, which trial continued for several days. After the argument of the case, the jury were charged by the Court, and proceeded to consider their verdict. On the 1st day of July, an entry is made by the Court, that the jury -were again respited until the next day at 9 o’clock. On Saturday, the 2d day of July, an entry appears, to the effect “that the jury returned into open court and resumed the consideration of the case;” and “the jurors aforesaid, upon their oaths aforesaid, do say, that they can not agree in a verdict.” It is, therefore, considered by the Court, with the assent of the prisoner, the defendant, that the jury be discharged and a mistrial be entered in the said cause; and thereupon the prisoner was remanded to jail.
It also appears that the two entries on the 1st and 2d days of July, 1870, above referred to, were never signed by the presiding judge, Hon. John Hugh Smith, nor by any successor, judge of that court. It is known that the Judge was never on the bench after the 2d day of July, but was taken sick on Monday after, and died on Thursday.
At September Term, 1871, the prisoner was tried by a jury, and a verdict of voluntary manslaughter ren *498 dered by tlie jury, and he sentenced to five years in the Penitentiary.
Before this, however, the defendant, by his counsel, moved for ' his discharge on the ground that he had been once in jeopardy, by being put on his trial before the former jury, and then interposed a special plea of “once in jeopardy/’ which plea was found against the prisoner; and now his counsel insist on a reversal here, on the ground that this plea ought to have been sustained on the facts, and the prisoner discharged.
It may be conceded that the prisoner, having been put on his trial, with a lawful jury, his jeopardy commenced, and that the Court could not, without the interposition of some of the well defined causes, as settled by our various adjudications on this question, discharge the jury without entitling the prisoner to be discharged from further prosecution. It is not denied that the jury may be discharged by consent of the prisoner. This brings us to the precise question presented in the case. No objection is taken to the record showing the fact that the prisoner was put on trial before a proper jury, before Hon. John Hugh Smith, and that the jury, after argument, were charged by the Court, and proceeded to consider of their verdict; but it is insisted that the entry on the 1st day of July, 1870, and the one on the 2d day of July, showing that the jury could not agree, and were discharged by the assent of the prisoner, can not be looked to as evidence of the fact of such discharge; and therefore, the only fact shown by the proper character of evidence, is, that the prisoner was once placed in jeopardy by having his case sub *499 mitted to this jury, and that no legal evidence appears of his consent to the discharge of the jury from the rendition of a verdict.
We have not time, at this late day of the term, to go into a consideration or critical examination of the authorities presented on this question. We can only give the conclusions at which the Court has arrived. By section 4040, sub-see. 4, of the Code, it is made the official duty of the Clerks of our courts “to keep a well-bound book, in which shall be entered the minutes of each day’s proceedings, during the session of the court, in the order in which they are made.” By section 4101 of the Code, under title, “Judicial Tribunals and their Relative Rights,” it is provided: “The minutes of the court shall be read each morning in open court, and signed by the Judge.”
Assuming that this last provision is for the purpose of authentication, and that the record thereby has its highest verification, in fact imports absolute verity, as any other record of a court, the question is, whether, in a case like the present, on failure to receive this last authentication by the death of the Judge, the act of the other officer, the Clerk, whose duty it is to enter the minutes of each day’s proceeding in his record book, shall go for nothing, and that suoh minutes, so kept by him, can not be looked to as evidence of the discharge of the jury, by consent of the prisoner.
We hold, that in such case, these minutes, so kept by the clerk, may be looked to as evidence of the proceedings of the court. In support of this view, we present the question in this form: Suppose a juryman *500 should suddenly die during the trial, or any one of the several cases of the like kind, known to the atithorities, should occur; it would be sufficient ground for discharge of the jury, without discharging the prisoner. These facts would appear on the minutes of the court, made up by the clerk, and authenticated by the signature of the judge. Certainly it will not be denied that the sudden death of the judge, during pendency of the trial, would, if properly shown, be cause for discharge of the jury, as a matter of necessity. But, admitting this cause to be a good one, on the principle maintained, such a fact could never be made to appear, as the death of the judge would forever preclude his signing .the minutes of the day’s proceedings. The reasons for ithe discharge of the jury, are entered on the minutes .of the court by the clerk as part of the day’s proceedings,; and the death of the judge before signing them, preventing the last act of authentication, we then would be compelled to fall back on the next best evidence of the facts, that is, the official act of a sworn officer, in the performance of the duty imposed on him by law. If we reject this, we must hold, that in every case, where a judge may die, under like circumstances, it shall work a discharge of the prisoner on trial, as it is utterly impossible that the minutes of that day’s proceedings shall be signed by the judge having a knowledge -of the facts. A signature bj a successor, we may remark, though it might formally .authenticate the proceedings, or entries made by the clerk, would, in fact, be no additional evidence of their verity; as he, having no knowledge of the facts of the case, could only sign *501 bis name to facts stated by the clerk, and it would but be the clerk’s statement of facts after all.
As to the case in 2 Heiskell, 521, we only say, that it did not present the question presented in this case, nor was the question considered; as the failure to sign the minutes was not caused by the act of God, as in this case. We must, in this case, either look to the entries made by the clerk in the performance of his official1 duty, and treat them as evidence of what occurred in his court, or else must hold, contrary to the universal current of decision, that the act of an officer, in the performance of his duty, in which he is required to make an entry in writing, shall have no force and effect whatever; and that the act of this clerk shall not, for some cause, which we are unable to see, be held equal to the return of a sheriff or constable on an execution. We do not think sound principle requires this, or that it will either be in furtherance of a sound public policy, or tend to elevate the administration of our criminal law; nor can we, after most careful thought, see that the rights of parties charged with crime, and on trial for the same, will be in the slightest degree endangered. The case of the death of a judge under circumstances like this, is certainly an occurrence not often to be anticipated, even in that indefinite period that may be called “the life of a State;” and the principle we lay down is alone applicable, and the decision made on that precise state of facts, and no other.
We can have no kind of question, that the prisoner did give his assent, in open court, to the discharge of the jury; and therefore, as the fact appears by the entry *502 of the sworn officer whose duty it was to make that entry on his record book, we feel no hesitancy in saying, he has been deprived of no right, when he has been refused a discharge by the court, by reason of a fact to which he has given his assent in legal form, notwithstanding the record evidence tendered, may lack the last authentication, by the signature of the judge then presiding. The failure to so authenticate, was prevented by the act of God, and thus is satisfactorily accounted for.
The maxim, that “the act of God is so treated by the law as to affect no one injuriously;” or, as stated by Mr. Broome, in Legal Maxims, 211, “it would be unreasonable that those things which are inevitable by the act of God, which no industry can avoid, no policy prevent, should be construed to the prejudice of any person in whom there has been no laches,” is appropriate to this case, and must be held equally applicable to the State as private individuals; and that other maxim, “that to which a person assents, is not esteemed in law an injury,” would estop the prisoner from complaint of wrong, by the discharge of the jury.
We therefore hold, there was no error in refusing to discharge the prisoner, on the ground of his having been once in jeopardy.
As to the facts of the case, no other error of law being insisted on, we need only say, that they well warrant the finding of the jury; and we affirm the judgment of the court below.
NicholsoN, C. J., Deaderick, and Turney, concurred. McFarlaND, absent.